PHOENIX INSURANCE COMPANY, Plaintiff in Error. v. WALTER and ELSIE BROWN, Defendants in Error.—381 S.W.(2d) 573.

Eastern Section. February 21, 1964.

Certiorari Denied by Supreme Court July 15, 1964.

Heiskell Winstead, Church Hill, and Armstrong & Santore, Greeneville, for plaintiff in error.

Milligan, Silvers & Coleman, Greeneville, for defendants in error.

McAMIS, P. J. This action was brought by Walter and Elsie Brown against Phoenix Insurance Company upon an insurance policy issued in the name of Walter Brown, insuring property of Elsie Brown against loss by fire. The case was tried without a jury and resulted in a judgment for $1000.00, from which the Insurance Company has appealed.

The assignments renew here the defenses (1) that the action was not brought within the period of 12 months after the loss occurred as required by the policy; (2) the named insured, Walter Brown, had no insurable interest in the property.

Walter and Elsie Brown were divorced in 1953. Elsie Brown has since lived in Baltimore, Maryland. Walter Brown continued to live in Hawkins County, Tennessee, where the insured property is located. Notwithstanding the divorce, they appear to have maintained a relationship of trust and confidence.

In 1957, while the title to the insured property stood in his name, Walter Brown obtained from Robert C. Armstrong, an insurance agent of Rogersville, a policy of fire insurance on the property in the Great American Insurance Company. The premium for a three year

period ending August 10, 1960, was paid when that policy was issued.

On October 11, 1957, Walter Brown conveyed the property to Elsie Brown. No change was made in the first policy after this transfer of title. On October 1, 1960, Mr. Armstrong called to Mr. Brown's attention the necessity of renewing the insurance which had expired nearly two months before. Mr. Brown authorized a renewal of the insurance and on that date Armstrong issued the policy in defendant Phoenix Insurance Company. Brown testified that it did not occur to him to advise the agent that title to the property had been transferred to his former wife. It is not insisted the agent was aware of the transfer.

The house on the property was completely destroyed by fire on September 19, 1961, during the period for which the premium on the policy in the defendant company was paid by Mr. Brown. Suit was instituted January 29, 1963, approximately 16 months and 10 days after the fire occurred.

Brown reported the fire to Armstrong and, at the request of an adjuster, answered under oath certain questions which the adjuster reduced to writing. According to Brown, the adjuster took no formal proof of loss. When questioned by the Court, defendant's counsel stated that no formal proof of loss was ever furnished the Company. Defendant neither admitted nor denied liability over the period of the next five or six months.

Elsie Brown testified she was visiting in Rogersville when the fire occurred and was interviewed there by an adjuster representing defendant. After returning to Baltimore, and on October 1, 1961, she wrote the ad-

juster, inquiring whether the loss would be paid. She received no reply until about six months after the fire when, for the first time, defendant denied liability.

The limitation clause in the policy reads:

"No suit or action for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The policy also provides:

"The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

■ We think there is applicable here the following statement in Hill v. Home Ins. Co., 22 Tenn.App. 635, 641, 125 S.W.(2d) 189, 192:

"A provision limiting suit or action on the policy to 'twelve months next after the date of loss' means twelve months 'after the cause of action accrues'. Insurance Company v. Scales, 101 Tenn. 628, 641, 49 S.W. 743, 747.

"The policy here in question contained provisions for notice and proof of loss to be furnished by the insured to the insurer within sixty days from the date of the loss, which, in effect, afforded the insurer immunity from suit for such period of sixty days, and thereby postponed the accrual of the cause of action accordingly. 14 R.C.L., page 1419, section 581.

"But defendant's absolute and unconditional denial of any liability on the policy, in its letter to complainant of date February 12, 1934, was a waiver by defendant of the provision of the policy which afforded it immunity from suit for sixty days after the loss, and complainant's right to sue accrued when liability was thus denied by defendant. Insurance Company v. Hancock, 106 Tenn. 513, 516, 62 S.W. 145, 52 L.R.A. 665."

As we have seen, defendant failed either to admit or deny liability until at least five months after the fire occurred. No formal proof of loss was ever demanded or furnished. Denial of liability terminated defendant's immunity from suit and on that date the right to sue accrued. Hill v. Insurance Company, supra. Until that time plaintiffs could not know whether proof would be demanded. Suit was brought well within twelve months thereafter.

It should be pointed out that the Company is not attempting to defeat recovery because proof of loss was not furnished within 60 days after the fire occurred or thereafter.

In addition to the foregoing, under the terms of the policy above copied, the Company had sixty days after "ascertainment of the loss" either by agreement or arbitration award filed with the Company within which to pay the loss. The loss was never so ascertained and it follows that the right of action did not accrue until the denial of liability by letter to Elsie Brown.

Other stipulations of the policy may operate to nullify or invalidate a contractual limitation upon the time within which suit must be brought. 29A Am.Jur. 863. The text cites under a footnote Leach v. Republic Fire

Ins. Co., 58 N.H. 245, where a stipulation in a fire policy provided that the amount of any loss should be determined by impartial arbitration and that no suit should be maintained until after such award. The stipulation here involved is in effect the same since it allows the insurer 60 days after the filing of such award within which to pay the loss. A suit brought before the award or within 60 days thereafter would be premature.

In Phoenix Ins. Co. v. Fidelity & Deposit Insurance Company, 162 Tenn. 427, 37 S.W.(2d) 119, the Court followed what it termed the majority rule that a policy provision limiting the time for bringing suit must be construed along with a provision for immunity from suit and said: "The limitation begins to be effective from the time the right of action accrues, notwithstanding the expression 'after the fire.'"

Under the authorities cited we think the court correctly held the suit not barred. Did Walter Brown have an insurable interest in the property?

The record shows that Walter Brown was looking after the property for Elsie Brown and was expected to keep it insured. She was aware that a policy had been procured but apparently did not know it was in his name.

It should be pointed out at the outset that we are not dealing here with a policy provision requiring that the insured be the sole and unconditional owner of the property. The insistence is that the named insured was without an insurable interest and that Elsie Brown was the only person having such interest.

Baird v. Fidelity-Phoenix Fire Ins. Co., 178 Tenn. 653, 162 S.W.(2d) 384, 140 A.L.R. 1226, contains a full review

of Tennessee cases dealing with what constitutes an insurable interest, including the early case of Aetna Insurance Co. v. Miers, 37 Tenn. 139, where it was said:

"What is an insurable interest in property, is not very clearly and distinctly settled in the books. It is said that it may be proved, without the evidence of any legal or equitable title to the property insured. The term interest, in this application, does not necessarily imply property. There is some difficulty in likening an insurable interest to any other interest in property. Angel on Ins., sec. 56. But policies of insurance, without some interest, are illegal and void, as a species of gaming.

"So there must be a line of distinction between wager policies, and those coupled with an interest.

"The contract of insurance is one of indemnity against losses and disadvantages to the insured; and therefore, any interest in the subject matter, or property insured, is sufficient to sustain an insurance of real estate."

The opinion in the Baird case also quotes from Chief Justice Green's opinion in Gleason v. Prudential Fire Ins. Co., 127 Tenn. 8, at p. 28, 151 S.W. 1030 at p. 1935, as follows:

"The only question raised upon this petition is whether the husband has an insurable interest in the wife's general estate. The title to the property insured and destroyed was in Mrs. Adkisson, but the policy was issued to Adkisson and wife, and it is insisted on behalf of the receiver that Adkisson did not have any interest in this property, and that there can be no recovery on this policy. This defense is not well made.

"It appears in the proof that the property was Mrs.

Adkisson's general estate. Her husband, therefore, had a freehold estate therein, with the right to control it, and various other rights respecting it, which are well recognized. Standing in this attitude to the property, he had an insurable interest in it. We have so held in former unreported cases. Many authorities to this effect are collected in a note to Tyree v. Virginia F. & M. Ins. Co., 66 L.R.A. 657. The husband has a beneficial interest in such property, and he is also treated in many of the cases as agent for the wife respecting such property.''

The Baird case involved a policy running in the name of executors of the widow and devisee of the original owner. Although it was doubtful whether the widow had any interest in the property, it was held that, since the executors had the insured property under their care and control, they had an insurable interest.

The Baird opinion also cites Catron v. Tennessee Insurance Company, 25 Tenn. 176, where Mr. Justice Turley quoted from the opinion of Chief Justice Marshall in Columbia Insurance Co. v. Lawrence, 2 Pet. 25, 7 L.Ed. 335, which in turn quoted from Marshall on Insurance against Fire, as follows:

"It is not necessary however, in order to constitute an insurable interest, that the insured shall in every instance, have the absolute and unqualified property of the effects insured. A trustee, a mortgagor, a reversioner, a factor or agent, with the custody of goods to be sold upon commission may insure. * * *''

The question was next considered by the Supreme Court in Cherokee Founderies, Inc. v. Imperial Assur. Co., 188 Tenn. 349, 219 S.W.(2d) 203, 9 A.L.R.(2d) 177. Although the opinion indicates no recession from Baird

v. Insurance Company, supra, which is quoted from at some length, the Court held that a person having only a parol, and therefore voidable, contract to purchase real property did not have an insurable interest.

In American Indemnity Co. v. Sou. Missionary College, 195 Tenn. 513, 260 S.W.(2d) 269, 39 A.L.R.(2d) 714, a stockholder owning all of the stock of a corporation obtained a policy in its own name upon property of the subsidiary corporation. After holding that the stockholder had an insurable interest, and citing the rule broadly stated in the Baird case and set forth at 29 Am.Jur. p. 293, et seq., that anyone who would suffer a loss from the destruction of the property has an insurable interest, the Court, on petition to rehear, said:

"The petitioner is most insistent that the Southern Missionary College should have, in applying for the policy, stated the nature of its alleged interests, i.e., that it was the owner of all the stock in the Collegedale Merchantile Enterprises, Inc. We cannot accede to this as a sound postulate in the Law of Insurance. There are cases almost without number dealing with the question of 'sole and unconditional ownership' of property where the insurer insisted upon a forfeiture because of an invalid title, or no legal title, or no title at all in the policy holder. But in cases too numerous to require citation it is held that even though ownership does not rise to the dignity of a legal title the interest may be insurable."

Gillespie v. Federal Compress & Warehouse Co., 37 Tenn.App. 476, 265 S.W.(2d) 21, holds that a warehouseman who is not bound to insure property in transit to or from his warehouse has an insurable interest in the property because "of the frequent uncertainty as to whether the damage occurred in transit or in storage."

Under the proof in this case, Walter Brown acted as the agent of the owner in looking after the property and keeping it insured. If he had failed to procure insurance he might have been held responsible for the loss and we think, under the authorities above cited and discussed, he had an insurable interest.

Affirmed.

Cooper and Parrott, JJ., concur.