815 F.2d 78
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MID-SOUTH COIN COMPANY, INC., Plaintiff-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee.
 No. 86-5135.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1987.
 
 Before LIVELY, JONES, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 On March 2, 1983, a burglary occurred at premises owned by plaintiff (Mid-South). Mid-South carried property insurance with the defendant (St. Paul) and filed a claim for the policy limits of $100,000. The claim was ultimately denied and Mid-South filed suit in state court in July of 1985. After first removing the case to the federal court on diversity grounds, the defendant filed a motion to dismiss predicated upon policy language which required that litigation be instituted within one year of the date the insured became aware of the loss. No response was filed to this motion and it was granted. Mid-South then sought reconsideration and relief from the judgment which was denied. This appeal followed.
 
 
 2
 On appeal, Mid-South admits that suit was not timely instituted but argues waiver, estoppel, and that summary judgment was inappropriate.[1] Finding as did the district court that Tennessee law does not sanction the application of principles of waiver or estoppel under these circumstances, we affirm.
 
 
 3
 * The facts of this matter are not in dispute. Mid-South notified St.Paul on March 3, 1983, one day after the burglary loss occurred. St. Paul immediately began an investigation of the theft but had considerable difficulty obtaining information from Mid-South. St. Paul finally retained an attorney to investigate this claim and to conduct-an examination under oath of Mid-South's principal owner. It was not until November of 1983 that Mid-South submitted a list of items allegedly stolen, after which a second examination under oath was conducted.
 
 
 4
 Finding the circumstances of the theft to be suspicious and unexplained, St.Paul denied the claim in writing on March 26, 1984. St. Paul heard nothing further until June 11, 1984, when Harold Walter, an attorney representing Mid-South, wrote, oil realize that St. Paul has denied the claim," but nonetheless offered to settle for $50,000 or suit would be filed. St. Paul replied on. June 13, 1984, indicating that Mid-South's demand was unreasonable and reiterating its pre-denial offer to settle for $17,000. Again St. Paul heard nothing further until late November of 1984 when it was contacted by telephone by a new attorney for Mid-South, Stevan Black. St. Paul reviewed with Black the dealing between the parties to this point in time. The conversation ended with neither party changing its position and Black indicating he would file suit. One final conversation ensued between the parties on February 6, 1985, with no change in result. Suit was unit initiated some five months later.
 
 II.
 
 5
 The policy language involved -here reads: "Any lawsuit to recover on a property claim must begin within one year of the date you become aware of the loss."
 
 
 6
 Although Mid-South became aware of the loss on March 3, 1983, it is clear that the Tennessee courts have construed such language to give an insured one year from the date its cause of action accrues, i.e., the date of claim denial. Das v. State Farm Fire & Casualty Company, 713 S.W.2d 318 (Tenn. App. 1986); Phonenix Insurance Company v. Brown, 53 Tenn App. 240, 381 S.W.2d 573 (1964); Hill v. Home Insurance Co., 22 Tenn. App. 635, 125 S.W.2d 189 (1938). It is equally clear that Tennessee law holds that such contractual periods of limitations in insurance policies are enforceable. Guthrie v. Connecticut Indemnity Association, 101 Tenn. 643, 49 S.W. 829 (1899); Card v. Commercial Casualty Ins. Co., 20 Tenn. .App. 132, 95 S.W.2d 1281 (1936). Th is suit should have been instituted by March 26, 1985, unless Mid-South is somehow excused from timely filing by the conduct of the defendant .
 
 
 7
 In an attempt to avoid the consequences of late filing, Mid-South primarily makes two arguments. First it argues that since the denial occurred more than one year after the loss, that this in and of itself results in a waiver of the one year period and makes the only time period relevant the Tennessee six-year statute of limitations for contract actions. This argument simply is untenable in light of the previously referenced Tennessee law which makes the one-year contractual limitation period run from the date of denial whenever that occurs.
 
 
 8
 Mid-South also argues that the continued "negotiations" between the parties after the March 26, 1984, denial amounts to a waiver of the one-year provision. Here again, Tennessee law does not support plaintiff's contentions. If after a claim is denied, an insurer makes an offer of compromise to avoid litigation this does not result in waiver or estoppel as to policy limitations. Das v. State Farm Fire & Casualty Company, supra; Continental Insurance Company v. Fire Association, 152 F.2d 239, 240 (6th Cir. 1945).
 
 
 9
 One can conceive of circumstances where conduct of an insurer might so mislead an insured as to justify a departure from the general rule, but such facts are not present here. The March 26, 1984, denial was in writing and was very clear and specific as to the reasons for denial.[2] St. Paul never wavered from its pre-denial compromise offer of $17,000 nor did it ever indicate the offer was other than to avoid the costs of litigation. Plaintiff was represented by counsel and counsel indicated in writing that he knew the claim was denied. We are not dealing here with equivocation or ambiguity on the part of the insurance company. It would be indeed a counter-productive rule of law which would prevent or discourage an insurance carrier from continuing to try to avoid litigation by talking compromise after a denial. We find no misleading, overreaching, or attempts to lull into a sense of false security. Finding neither waiver, estoppel, nor disputed questions of fact, we AFFIRM.
 
 
 
 [1]
 Although St. Paul filed a mot ion to dismiss, it was accompanied by an affidavit and was apparently dealt with by the district court as a motion for summary judgment . Fed. R. Civ. P. 12(b)
 
 
 [2]
 Mid-South's attempt to find support for its waiver argument in the fact that the March 26, 1984, denial did not mention the one-year clause is without merit. The one-year clause is not implicated in the substantive reasons for claim denial, but is a defense to litigation