# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

**July 9, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

TOM MILLIGAN and wife )
LOUISE MILLIGAN, )
           )
    Plaintiffs/Appellees, ) Cannon Chancery
           ) No. 95-27
VS. )
           ) Appeal No.
CURTIS GEORGE and wife ) 01A01-9609-CH-00406
WILMA J. GEORGE, )
           )
    Defendants/Appellants. )

APPEAL FROM THE CHANCERY COURT FOR CANNON COUNTY
AT WOODBURY, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, CHANCELLOR

For the Plaintiffs/Appellees:          For the Defendants/Appellants:

Frank Buck                    Sue N. Puckett-Jernigan
Lena Ann Buck             Smithville, Tennessee
Smithville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This interlocutory appeal involves a boundary line dispute between neighbors who live along Wilmouth Creek in Cannon County. Following inconclusive litigation between two of their neighbors, the owners of one of the tracts filed a boundary line action in the Chancery Court for Cannon County against the owners of one of the adjoining tracts that had been involved in the earlier litigation. The defending landowners moved to dismiss the complaint on the ground that the decision in the earlier litigation was res judicata as to the plaintiff landowners' claims. The trial court denied the motion but granted permission to seek an interlocutory appeal. We granted the application for permission to appeal and now affirm the denial of the motion to dismiss because the parties in this case and the former case are not the same.

## I.

Three families live along some bottom land adjacent to Wilmouth Creek Road in the Liberty community of Cannon County. Robert E. and Jerris Ann Campbell (the "Campbells") live on a 35-acre tract that has been owned by Mr. Campbell's family for many years. Wilmouth Creek and Wilmouth Creek Road run in a north to south direction along the eastern boundary of the Campbells' property. Their neighbors to the east are Curtis and Wilma J. George (the "Georges"). The Georges purchased their 31.25-acre tract in July 1983. The Campbells' neighbors to the south and west are Tom and Louise Milligan (the "Milligans"). The Milligans purchased their 40-acre tract in October 1985. Wilmouth Creek Road and Wilmouth Creek also run along a portion of the eastern boundary of the Milligans' property. A small portion of the Milligans' property shares a boundary line with the southern portion of the Georges' property.

While the terrain in this area is hilly, there is a relatively level strip of good bottom land along Wilmouth Creek and Wilmouth Creek Road. The neighbors' disagreement concerns the ownership of this bottom land. The Georges believe that they own the land east of Wilmouth Creek because a 1924 deed in their chain

of title identified Wilmouth Creek as the western boundary line of their property. Both the Campbells and the Milligans believe that their boundary line with the Georges is to the east of the present location of Wilmouth Creek because the creek moved to the west following a flood occurring between 1925 and 1927.

In March 1993 the Georges filed suit in the Chancery Court for Cannon County to enjoin the Campbells from removing a fence the Georges had erected along the creek. The Campbells counterclaimed that they owned the disputed property under color of title and by adverse possession and that the Georges were trespassing on and interfering with their use of the property. Following a bench trial in March 1994, the trial court entered a final judgment, concluding that "both the plaintiffs and the defendants have failed to carry their respective burdens of proof, and, accordingly, that both complaints should be dismissed." *George v. Campbell,* Civ. Action No. 93-28 (Cannon Chan. April 8, 1994).

On March 28, 1995, the Milligans filed the present suit against the Georges in the Chancery Court for Cannon County seeking a declaration that they, rather than the Georges, owned a portion of the bottom land.[1] They asserted in their complaint that "somewhere between the approximate time of 1925 and 1927, the creek moved from its eastern location to its more western location and did so suddenly in a great flood." The Milligans also requested the trial court to enjoin the Georges from interfering with their efforts to survey the property. In support of this request, they averred "that on or about December 5, 1994, the Plaintiffs' surveyor . . . asked permission of the Defendants to survey the aforesaid property by virtue of achieving closure of both the Plaintiffs' and the Defendants' properties. In a similar and interrelated cause of action in Campbell v. George, the cause of action was tried previously and Chancellor Stegall dismissed the cause

---

[1]Regrettably the complaint does not describe this disputed property with precision. The complaint states that "[e]xhibit No. 12 to the original complaint only" depicts the disputed property as a "small area marked in red." This exhibit was not included in the appellate record when it was originally filed with this court and is likewise not part of the supplemental appellate record. The trial court clerk has been unable to comply with our order to file the fourteen exhibits referred to in the Milligans' complaint. Accordingly, in an order entered contemporaneously with this opinion, we have ordered the trial court clerk to forfeit all costs for the preparation and transmission of the record in accordance with Tenn. R. App. P. 40(g).

of action because there was no closure of the survey of Defendants' properties."

One week later, the Campbells filed a separate suit against the Georges in the Chancery Court for Cannon County seeking to establish the boundary lines between their properties. *See Campbell v. George,* Civ. Action No. 95-36 (Cannon Chan.). This suit apparently raises the same issues that the trial court had been unable to resolve in the earlier lawsuit between the same parties.

Seizing on the reference in the Milligans' complaint to the "similar and interrelated cause of action in Campbell v. George," the Georges moved to dismiss the Milligans' complaint on the ground that is was barred by the doctrine of res judicata. The Georges asserted that property claimed by the Milligans "is a portion of the exact same property claimed by the Campbell plaintiffs" in *George v. Campbell.* The Georges filed a similar motion seeking to dismiss the Campbells' lawsuit. On September 20, 1995, the trial court filed an opinion denying the Campbells' motion to dismiss in both cases. Following the entry of an order on April 19, 1996 denying the motions, the trial court entered an order on September 5, 1996, granting permission to seek an interlocutory appeal. We granted the Georges permission to appeal on September 25, 1996.

## II.
### THE SCOPE OF THIS APPEAL

We must, as a threshold matter, address the scope of this appeal. We have determined that we should not consider issues relating to the doctrine of collateral estoppel or to the denial of the Georges' motion to dismiss the Campbells' April 1995 complaint because of the scope of the Georges' motion to dismiss and because of shortcomings in the record filed with this court.

The Court of Appeals has appellate jurisdiction only. Tenn. Code Ann. § 16-4-108(a)(1) (1994); *Clement v. Nichols,* 186 Tenn. 235, 237, 209 S.W.2d 23, 23 (1948); *Stewart Title Guar. Co. v. FDIC,* 936 S.W.2d 266, 270-71 (Tenn. Ct. App. 1996); *John Weis, Inc. v. Reed,* 22 Tenn. App. 90, 100, 118 S.W.2d 677, 683 (1938). Accordingly, we decline to consider issues and defenses that have not

-4-

been presented to the trial court. *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn. 1991); *Alumax Aluminum Corp. v. Armstrong Ceiling Sys., Inc.,* 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987); *Yarbrough v. Stiles*, 717 S.W.2d 886, 888 (Tenn. Ct. App. 1986).

The scope of an interlocutory appeal is further restricted because the appellate courts will not consider issues beyond those certified by the trial court and accepted by the appellate court. *Tennessee Dep't of Mental Health and Mental Retardation v. Hughes,* 531 S.W.2d 299, 300 (Tenn. 1975); *State v. Hazzard,* 743 S.W.2d 938, 941 (Tenn. Crim. App. 1987); *Montcastle v. Baird,* 723 S.W.2d 119, 122 (Tenn. Ct. App. 1986). Trial courts may not, however, certify questions to the appellate court that have not actually been raised by the parties and decided by the trial court. Permitting the trial court to do so would require the appellate courts to consider hypothetical issues that are not the proper subject of judicial review. Judicial economy prompts us to avoid rendering advisory opinions or deciding abstract legal questions. *McIntyre v. Traughber,* 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994).

The Georges' motion to dismiss the Milligans' complaint asserted only a res judicata defense.[2] The trial court's opinion, bearing the combined style of *Milligan v. George* and *Campbell v. George,* was based only on res judicata. The trial court mentioned the doctrine of collateral estoppel in dicta when it observed: "[i]ssues perhaps could be raised as to whether collateral estoppel might apply, but those are not raised herein. Without a lengthy explanation, it would be the opinion of this Court, that collateral estoppel also would not bar the suit between Milligan and George." Later in the opinion, the trial court disposed of the motion to dismiss the Campbells' complaint on the grounds of res judicata without mentioning collateral estoppel. No conclusion can be drawn from this record other than that the Georges did not assert, and the trial court did not act on, a collateral estoppel defense in either *Milligan v. George* or *Campbell v. George.*

---

[2]While we assume that the Georges' motion to dismiss in *Campbell v. George* was similar, we cannot know this with certainty since the record in *Campbell v. George* has not been filed with this court.

Following the entry of the order denying the motion to dismiss the Milligans' claims, the Georges filed a motion requesting permission to seek an interlocutory appeal. Notwithstanding the fact that the Georges' motion to dismiss did not invoke the doctrine of collateral estoppel, the trial court entered an order granting the Georges permission to seek an interlocutory appeal, erroneously reciting that the Georges' motion to dismiss contained a collateral estoppel defense. The order also recited that:

> The doctrines of *res judicata* and *collateral estoppel* are extremely important in our jurisprudence as they provide finality and closure to issues and lawsuits which have been previously decided, and they promote respect for judicial rulings; yet the Court had concerns that the prior order did not resolve the issues between the parties. . ."[3]

Our order granting the interlocutory appeal repeated this language. After we granted the interlocutory appeal, the trial court clerk transmitted only the record in *Milligan v. George* to this court. Despite our repeated attempts to obtain the full record needed to adjudicate the merits of this appeal, we have not received the complete record in *Milligan v. George,* and we have not received the record in *Campbell v. George.*

Based on these circumstances, we have determined that it would be inappropriate to address the effect of the doctrine of collateral estoppel on either the Milligans' claims or the Campbells' claims because the Georges never asserted a collateral estoppel defense in the trial court. We have also determined that we should not consider the effect of the doctrine of res judicata on the Campbells' claims because the Georges have perfected an interlocutory appeal only from the denial of their motion to dismiss in *Milligan v. George.* None of the motions or orders seeking an interlocutory appeal refer to an appeal from the denial of the Georges' motion to dismiss in *Campbell v. George*, and the record in *Campbell v. George* has not been filed with this court. Accordingly, the only issue ripe for adjudication on this appeal is whether the doctrine of res judicata bars the Milligans' complaint against the Georges.

---

[3]The language in the latter part of the quoted text had nothing to do with the Milligans' claims because they had not been "parties" to the earlier *George v. Campbell* litigation. The trial court's reference to "parties" could only have been to the Campbells and the Milligans.

# III.

## THE RES JUDICATA DEFENSE

The Georges assert that the trial court should have granted their motion to dismiss the Milligans' suit because the Milligans sought to litigate issues that were similar to the issues raised in *George v. Campbell*. Without question, one of the pivotal issues in both *George v. Campbell* and *Milligan v. George* is the claim that Wilmouth Creek suddenly changed its course following a flood between 1925 and 1927. However, issue identity is not the only ingredient of the doctrine of res judicata; identity of parties is also necessary.

Res judicata is a claim preclusion doctrine that promotes finality in litigation. *Moulton v. Ford Motor Co.,* 533 S.W.2d 295, 296 (Tenn. 1976). It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn. 1995). Parties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) that the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. *White v. White,* 876 S.W.2d 837, 839 (Tenn. 1994); *Collins v. Greene County Bank,* 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995).

Identity of the parties or their privies in the two actions is indispensable to res judicata defense. *See Shell v. Law,* 935 S.W.2d 402, 408 (Tenn. Ct. App. 1996); *Stacks v. Saunders,* 812 S.W.2d 587, 590 (Tenn. Ct. App. 1990). In the context of the res judicata defense, "privity" relates to the subject matter of the litigation, *Harris v. St. Mary's Medical Ctr., Inc.,* 726 S.W.2d 902, 905 (Tenn. 1987); *Shelley v. Gipson,* 218 Tenn. 1, 7, 400 S.W.2d 709, 712 (1966). It requires a mutual or successive relationship to the same rights of property. *Phillips v. General Motors Corp.,* 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984). Thus, parties to litigation involving the title to real property will be bound by an earlier decree establishing title to the property in which their successors in title participated. *See Uhlhorn v. Keltner,* 637 S.W.2d 844, 848 (Tenn. 1982).

The fatal flaw in the Georges' res judicata defense is that the Milligans are not in privity with the Campbells with regard to the disputed boundary line between the Campbells' property and the Georges' property. The Campbells and the Milligans own different tracts of property, and the Milligans' boundary line with the Georges is different. Thus, the Campbells are not the Milligans' successors in title. Since the Milligans were not parties to *George v. Campbell*, this earlier litigation cannot provide a basis for invoking the doctrine of res judicata.[4]

## IV.

We affirm the order dismissing the Georges' motion to dismiss the Milligans' complaint and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Curtis and Wilma J. George and their surety for which execution, if necessary, may issue.

_____

_____

[4]We would reach an identical conclusion if we were considering whether the doctrine of collateral estoppel bars the Milligans' claims. Like res judicata, collateral estoppel requires that the two suits involve the same parties. *Dickerson v. Godfrey,* 825 S.W.2d 692, 695 (Tenn. 1992); *Shelley v. Gipson,* 218 Tenn. at 13, 400 S.W.2d at 714.

We might not necessarily reach the same conclusion were we considering the res judicata effect of the *George v. Campbell* case on the *Campbell v. George* litigation. The earlier judgment, even though inconclusive, may very well be a decision "on the merits." *See* Tenn. R. Civ. P. 41.02(3); *Olsen v. Muskegon Piston Ring Co.,* 117 F.2d 163, 165 (6th Cir. 1941); *Parks v. Clift,* 77 Tenn. 529, 531-32 (1882) (holding that a judgment is on the merits if the issues could have been disposed of had the parties properly presented and managed their respective cases). However, the doctrine of res judicata applies only to the facts in existence at the time the earlier judgment was rendered. It does not prevent the re-examination of the same question between the same parties when, in the interval, the facts have changed or new facts have occurred that may alter the litigants' legal rights and relations. *White v. White,* 876 S.W.2d at 839-40; *Banks v. Banks,* 18 Tenn. App. 347, 350, 77 S.W.2d 74, 76 (1934). A decision in *Milligan v. George* may provide the basis for re-examining the boundary line issues between the Campbells and the Georges.

                                        WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE